# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| QUINCETTA Y. CARGILL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 2:18-cv-0344-AKK-JEO |
| ) | |
| JAIL ADMINISTRATOR HOUSE, et al., ) | |
| ) | |
| Defendants. ) | |

## REPORT AND RECOMMENDATION

The plaintiff, Quincetta Cargill, has filed a *pro se* amended complaint pursuant to 42 U.S.C. § 1983, alleging violations of her rights under the Constitution or laws of the United States. (Doc. 20). She names the following defendants in the amended complaint: Clay County Jail Administrator Shane House and Clay County Officer Josh Spence. (*Id.* at 4-5).[1] The plaintiff seeks compensatory damages and injunctive relief. (*Id.* at 15). In accordance with the usual practices of this court and 28 U.S.C. § 636(b)(1), the amended complaint was referred to the undersigned magistrate judge for a preliminary report and recommendation. *See McCarthy v. Bronson*, 500 U.S. 136 (1991).

---

[1] The court dismissed defendant Shelby County Jail Physician Dr. J. N. Gurley on April 19, 2019. (Doc. 24).

## I. Procedural History

On March 27, 2019, the undersigned entered a report recommending that the plaintiff's medical claim against defendant Dr. Gurley be dismissed with prejudice for failure to state a claim upon which relief could be granted. (Doc. 22). On April 19, 2019, the district court adopted the report and accepted the undersigned's recommendation. (Doc. 24). The court dismissed Dr. Gurley and referred the remaining excessive force claim against Jail Administrator House and Officer Spence to the undersigned for further proceedings. (*Id.*).

On April 22, 2019, the undersigned entered an Order for Special Report directing the Clerk to forward copies of the amended complaint to each of the named defendants and directing the defendants to file a special report addressing the plaintiff's factual allegations. (Doc. 25). The undersigned advised the defendants that the special report could be submitted under oath or accompanied by affidavits, and, if appropriate, the court would consider it as a motion for summary judgment filed pursuant to Rule 56 of the Federal Rules of Civil Procedure. (*Id.*).

On October 18, 2019, the defendants filed a special report, supplemented by affidavits and other evidence. (Docs. 57–58). On October 28, 2019, the plaintiff filed a response. (Doc. 60). On November 6, 2019, the undersigned notified the parties that the court would construe the special report as a motion for summary judgment and notified the plaintiff that she had twenty-one days to respond to the

motion for summary judgment by filing affidavits or other material. (Doc. 61). The undersigned also advised the plaintiff of the consequences of any default or failure to comply with Federal Rule of Civil Procedure 56. (*Id.*). *See Griffith v. Wainwright*, 772 F.2d 822, 825 (11th Cir. 1985). This matter is now before the court on the defendants' motion for summary judgment and the response thereto.

## II. Standard of Review

Because the court has construed the defendants' special report as a motion for summary judgment, Federal Rule of Civil Procedure 56 governs the resolution of the motion. Under Rule 56(a), summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In making that assessment, the court must view the evidence in a light most favorable to the non-moving party and must draw all reasonable inferences against the moving party. *Chapman v. AI Transport,* 229 F.3d 1012, 1023 (11th Cir. 2000). The burden of proof is upon the moving party to establish his prima facie entitlement to summary judgment by showing the absence of genuine issues of material fact and that he is due to prevail as a matter of law. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). Unless the plaintiff, who carries the ultimate burden of proving his action, can show some evidence with respect to each element of his claim, all other issues of fact become immaterial, and the moving party is entitled to judgment as a matter of law. *See*

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986); *Bennett v. Parker*, 898 F.2d 1530, 1532-33 (11th Cir. 1990).  As the Eleventh Circuit has explained:

> Facts in dispute cease to be "material" facts when the plaintiff fails to establish a prima facie case.  "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." [citations omitted].  Thus, under such circumstances, the public official is entitled to judgment as a matter of law, because the plaintiff has failed to carry the burden of proof.  This rule facilitates the dismissal of factually unsupported claims prior to trial.

*Bennett*, 898 F.2d at 1532.

However, any "specific facts" pled in a *pro se* plaintiff's sworn complaint must be considered in opposition to summary judgment.  *See Caldwell v. Warden, FCI Talladega,* 748 F.3d 1090, 1098 (11th Cir. 2014) (citing *Perry v. Thompson*, 786 F.2d 1093, 1095 (11th Cir. 1986)).  Additionally, because the plaintiff is *pro se*, the court must construe the complaint more liberally than it would pleadings drafted by lawyers.  *Hughes v. Rowe*, 449 U.S. 5, 9 (1980).  "*Pro se* pleading are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed."  *Boxer X v. Harris*, 437 F.3d 1107, 1110 (11th Cir. 2006).

## III. Summary Judgment Facts[2]

The plaintiff is an inmate presently housed in the Shelby County Jail in Columbiana, Alabama. (Doc. 20 at 4). On February 12, 2018, she was detained in the Clay County Jail in Ashland, Alabama. (*Id.* at 7). She claims that on February 12, 2018, she began experiencing flu symptoms, including body aches, fever, chills, and vomiting. (*Id.* at 9). She alleges that her cellmate, Caitlin Yates, began pounding on the cell door to obtain assistance. (*Id.* at 9–10).[3] Both the plaintiff and inmate Yates complied with the order from Jail Administrator House and Officer Spence to step away from the door so the door could be opened. (Doc. 58-1, Spence Aff. ¶ 14). The plaintiff alleges that after House entered her cell, he ordered her to "turn around, put your hands behind your back, and get down on your fucking knees." (Doc. 20 at 9).[4] The plaintiff states she "did not have the energy" to explain to House

---

[2] Based on the foregoing summary judgment standard, the following facts are undisputed or, if disputed, taken in a light most favorable to the plaintiff. Factual disputes are addressed in footnote form.

[3] The plaintiff states that the incident occurred at approximately 7:40 pm, while the incident report reflects that the incident occurred in the "a.m." (Docs. 20 at 9; 57-3 at 5). The incident report only names inmate Yates as the "active participant," reflecting that she was "beating the door." (Doc. 57-3 at 5). The report states that the plaintiff was ordered to get down on her knees, handcuffed, and removed. (*Id.*). Inmate Yates yelled and screamed, would not comply with orders, and was eventually placed in a restraint chair. (*Id.*).

[4] Officer Spence stated that the plaintiff and inmate Yates were screaming and refused to calm down. (Doc. 58-1, Spence Aff. ¶¶ 13–14). The plaintiff was ordered to get on the ground so that she could be handcuffed. (*Id.* ¶ 14). After the plaintiff refused to comply and continued to yell and scream, House pulled out a taser device, and the plaintiff complied. (*Id.*). The taser was not fired. (*Id.*).

that she was not the one pounding on the door, but she did tell him that she suffered from a degenerative bone and joint disorder and could not get down on her knees. (*Id*.).[5] She alleges that House again commanded that she get down on her knees, at which point she "clumsily" complied. (*Id*.). She contends the "awkwardness" of getting down on the floor injured her left knee. (*Id*.).

After getting on her knees, Officer Spence handcuffed the plaintiff with her hands behind her back. (*Id.* at 10). House ordered the plaintiff to stand up. (*Id.*). The plaintiff explained that her degenerative disorder and flu symptoms prevented her from standing without using her hands, at which point House ordered Officer Spence to "get her ass up." (*Id*.). She alleges Officer Spence "snatched [her] violently by the cuffed wrists to the standing position" (*Id*. at 7).[6] She claims Officer Spence's action injured her wrists, lower back, left knee, and left ankle, and that she "soiled [her] pants" because of the strain she exerted to "transition from knees to a standing position." (*Id*. at 8). She contends that House's "behavior and temper[a]ment were contrary to any professional humane duty or obligation," and

---

[5] House stated that "[a]t no time did the Plaintiff state or indicate to me in any way that she was unable to get to the ground or that it was painful to get to the ground. Plaintiff did not appear to be injured in any way during any interaction I had with her. Plaintiff was not acting like she was in pain at any time during any interaction I had with her." (Doc. 57-4, House Aff. ¶ 15). Officer Spence made a similar statement. (Doc. 58-1, Spence Aff. ¶ 17).

[6] Officer Spence stated that he "assisted [the plaintiff] to a standing position" and does not recall anything "out of the ordinary when placing the handcuffs on Plaintiff or assisting her to a standing position." (Doc. 58-1, Spence Aff. ¶ 14). He further states that he "used no more force than necessary in placing handcuffs on the Plaintiff and assisting her to a standing position." (*Id.* ¶ 18).

6

that his demands caused Officer Spence "to perform in an abusive[,] aggressive[, and] unprofessional manner." (*Id*. at 10).[7] The plaintiff admits that she did not file a grievance at the Clay County Jail "because [she] was shipped out to Shelby County the next day." (*Id.* at 17–18).

The next day, on February 13, 2018, the plaintiff was transferred to Shelby County Jail, where she "reported having sustained injuries 'at the previous institution' and was in need of medical care and x-rays to access the extent of [her] injuries." (*Id.* at 12). The plaintiff states she "suspected" she had fractured her wrists. (*Id.*). Dr. Gurley examined the plaintiff's wrists and lower back and ordered X-rays of her wrists and left knee. (*Id.* at 13). The plaintiff does not discuss or provide the results of her x-rays. She simply asserts that "the x-ray report stated that correlation with clinical examination is essential" and claims her wrists and left knee "are still presenting painful problems." (*Id.*).

## IV. Analysis

### A.   Exhaustion of Administrative Remedies

The plaintiff alleges that defendants House and Spence violated her Fourteenth Amendment rights by using excessive force to handcuff her on February

---

[7] Officer Spence stated that he escorted the plaintiff and inmate Yates to a holding cell where House spoke to them about being disruptive and following orders. (Doc. 58-1, Spence Aff. ¶ 16). He further stated that the plaintiff "did not request medical care following this incident." (*Id.* ¶ 19).

12, 2018, when she was detained at the Clay County Jail. (Doc. 20 at 5).[8] In addition to responding to the specific allegations in the plaintiff's complaint, defendants House and Spence assert in their Special Report that the Clay County Jail maintains a grievance procedure by which inmates may express complaints concerning the conditions of their confinement. (Doc. 57 at 3–4, 9). They argue that the plaintiff's claims against them are due to be dismissed because the plaintiff did not exhaust her administrative remedies pursuant to 42 U.S.C. § 1997e(a) prior to filing the present lawsuit. (*Id.*).

Title 42 U.S.C. § 1997e(a), as amended by the Prison Litigation Reform Act ("PLRA"), provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

The question of exhaustion under the PLRA is a "threshold matter" that federal courts must address before considering the merits of the case. *See Chandler v. Crosby*, 379 F.3d 1278, 1286 (11th Cir. 2004). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve

---

[8] The plaintiff states that her Eighth Amendment rights were also violated. (Doc. 20 at 5). Because the plaintiff was a pretrial detainee at the time of the incident (*id.* at 6), her claims are reviewed pursuant to the Due Process Clause of the Fourteenth Amendment. *See Piazza v. Jefferson Cnty., Ala.,* 923 F.3d 947, 952 (11th Cir. 2019).

general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

In *Alexander v. Hawk*, the Eleventh Circuit Court of Appeals discussed the PLRA's amendment of 42 U.S.C. § 1997e, noting that because exhaustion is mandated by the statute, a court has no discretion to waive this requirement. 159 F.3d 1321, 1325-26 (11th Cir. 1998). The United States Supreme Court, interpreting the intent of Congress, concluded that exhaustion of administrative remedies is now mandatory even if the procedures to do so do not meet certain "minimum acceptable standards" of fairness and effectiveness, and courts cannot excuse exhaustion even when it would not be "appropriate and in the interests of justice." *Booth v. Churner*, 532 U.S. 731, 740 n.5 (2001).

The Eleventh Circuit Court of Appeals has held that the exhaustion defense "is not ordinarily the proper subject for a summary judgment; instead, it should be raised in a motion to dismiss, or be treated as such if raised in a motion for summary judgment." *Bryant v. Rich*, 530 F.3d 1368, 1374-75 (11th Cir. 2008) (quotation marks and citations omitted); *Trias v. Fla. Dep't of Corr.*, 587 F. App'x 531, 536 (11th Cir. 2014) (finding that the district court properly construed defendant's motion for summary judgment as a motion to dismiss for failure to exhaust administrative remedies). Courts must use the following standard when deciding whether a prisoner has exhausted his administrative remedies:

> First, the court looks to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's version of the facts as true. If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed.

*Turner v. Burnside*, 541 F.3d 1077, 1082 (11th Cir. 2008) (citing *Bryant,* 530 F.3d at 1373-74).

If the complaint is not subject to dismissal at this step, then the court should make "specific findings in order to resolve the disputed factual issues related to exhaustion." *Turner*, 541 F.3d at 1082. "The judge . . . may consider facts outside of the pleadings to resolve a factual dispute as to exhaustion where doing so does not decide the merits, and the parties have a sufficient opportunity to develop the record." *Trias*, 587 F. App'x at 535 (citing *Bryant*, 530 F.3d at 1376). The defendants bear the burden of proving that the plaintiff failed to exhaust her administrative remedies. *Turner*, 541 F.3d at 1082.

Based on the foregoing, the undersigned will treat the defendants' motion for summary judgment as a motion to dismiss to the extent they argue the plaintiff failed to exhaust her administrative remedies pursuant to 42 U.S.C. § 1997e(a).

It is undisputed that the plaintiff did not file a grievance at the Clay County Jail. (Doc. 20 at 17). The reason the plaintiff provides for failing to file a grievance is her transfer to Shelby County Jail the next day. (*Id.* at 18).

Jail Administrator House stated that the Clay County Jail has a grievance policy and that inmates may use paper forms to submit grievances and that "[g]rievances of any emergency nature may be made orally and are handled immediately." (Doc. 57-4, House Aff. ¶ 9). Furthermore, House stated that the instructions for submitting a grievance is available on the Clay County Jail kiosk system, which inmates must acknowledge and accept to use the kiosk. (*Id.* ¶ 10). The plaintiff used the kiosk while she was at the Clay County Jail. (*Id.*). In fact, during her incarceration at Clay County Jail, the plaintiff submitted two inmate request forms. (*See* Docs. 57-4, House Aff. ¶ 11; 58-1, Spence Aff. ¶ 11). In response to the defendants' argument regarding her failure to file a grievance, the plaintiff simply states that it is "worthy of suspicion of deception" and "is in fact deflective." (Doc. 60 at 7). The plaintiff does not deny that a grievance policy existed and provides no reason for not following it, other than the fact that she was transferred the next day.

The plaintiff's transfer the next day to the Shelby County Jail is not sufficient justification for failing to follow the grievance procedure for the Clay County Jail. The plaintiff provides no explanation as to why she did not make an oral grievance or complete a paper form the day of the incident or the next morning before she was transferred. She asserts no allegation that she was prevented from doing so. Furthermore, nothing prevents the plaintiff from engaging in the grievance process

11

even though she is in another jail. *See Coleman v. Bartlett,* No. 5:10-cv-02772-IPJ, 2013 WL 1180301, at *1 (N.D. Ala. Mar. 14, 2013) ("While injunctive relief would not have been available to plaintiff once he was transferred, he has not pointed to anything in the Morgan County Jail's grievance policy that expressly prohibited him from filing a grievance after his transfer.").

Exhaustion of administrative remedies must be "proper." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id*. at 90-91. In other words, an institution's requirements define what is considered exhaustion. *See Jones v. Bock*, 549 U.S. 199, 218 (2007); *see also Bryant,* 530 F.3d at 1378) ("To exhaust administrative remedies in accordance with the PLRA, prisoners must 'properly take each step within the administrative process.'" (quoting *Johnson v. Meadows*, 418 F.3d 1152, 1158 (11th Cir. 2005))). The intent of Congress in requiring exhaustion of administrative remedies is that "prison officials have an opportunity to address the grievance internally and rule on the grievance before the inmate files a complaint in federal court." *Johnson*, 418 F.3d at 1158.

Because it is undisputed that the plaintiff failed to comply with Clay County Jail's grievance procedure concerning her excessive force claim, Jail officials were

not afforded an opportunity to take any corrective action concerning the plaintiff's claims before she filed the present action. Accordingly, the plaintiff's claim for excessive force is due to be dismissed without prejudice for the plaintiff's failure to exhaust her administrative remedies as required by 42 U.S.C. § 1997e(a). [9]

## B. Excessive Force

Even if the plaintiff's claim for excessive force were not subject to dismissal under 42 U.S.C. § 1997e(a) for failing to exhaust administrative remedies, the defendants' motion for summary judgment on the plaintiff's excessive force claim is due to be granted on the merits.

In *Kingsley v. Hendrickson*, 576 U.S. 389, 135 S. Ct. 2466 (2015), the Supreme Court set forth the standards to evaluate a pretrial detainee's excessive force claim. The Court held that a detainee is only required to show that an officer's use of force was objectively unreasonable, rejecting any requirement that a detainee prove an officer's subjective intent. *Id*. at 2472-73. However, the court also noted that objective reasonableness "turns on the 'facts and circumstances of each particular case,'" and the determination must be made "from the perspective of a

---

[9] Generally, constitutional claims that are unexhausted are dismissed without prejudice unless future attempts to exhaust would be absolutely time-barred under the administrative grievance procedure. *Bryant,* 530 F.3d at 1374-75, n.11; *see also Johnson,* 418 F.3d at 1157). The grievance procedure described by the defendants does not indicate a time limit on when a grievance may be filed. (Docs. 57-4, House Aff. ¶¶ 9–11; 58-1, Spence Aff. ¶ 9–11). As such, the undersigned recommends the plaintiff's claim be dismissed without prejudice.

reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." *Id*. at 2473 (citation omitted).

The reasonableness of the force applied can be gauged by such considerations as: (1) the relationship between the need for and the amount of force used; (2) the extent of the plaintiff's injuries; (3) any efforts made by officers to temper or limit the amount the force used; (4) the severity of the security problem at issue, (5) the threat reasonably perceived by officers; and (6) whether the plaintiff was actively resisting. *Id*. at 2473 (*citing Graham v. Connor*, 490 U.S. 386, 396 (1989)).

Additionally, the reviewing court must "account for the 'legitimate interests that stem from [the government's] need to manage the facility in which the individual is detained.'" *Kingsley,* 135 S. Ct. at 2473 (citation omitted).  In other words, courts recognize that the running of a jail or prison is "'an inordinately difficult undertaking'" where safety and order are prime considerations, and therefore correctional officials "'must have substantial discretion to devise reasonable solutions to the problems they face.'" *Id*. at 2474 (citations omitted).  For that reason, in making an objective reasonableness analysis, a court must "take account of the legitimate interests in managing a jail" and should give "deference to policies and practices needed to maintain order and institutional security." *Id*. Generally, courts "do not second-guess prison officials on matters that they are better

equipped to handle under the exigencies of an internal disturbance." *Wilson v. Blankenship*, 163 F.3d 1284, 1295 (11th Cir. 1998).

Although the court found that the plaintiff had stated an initial claim of excessive force based on her amended complaint (docs. 22, 24), the plaintiff has failed to establish a genuine issue of material fact at the summary judgment stage. Even viewed in the light most favorable to the plaintiff, there is a complete absence of proof that the use of force by House and Officer Spence was objectively unreasonable.

> Officer Spence stated that when he and House entered the cell,
>
> the Plaintiff and Inmate Yates were belligerently screaming and refused to calm down. We repeatedly ordered the inmates to stop yelling. Because the Plaintiff refused to stop yelling[,] she was ordered to get on the ground so that she could be handcuffed. Plaintiff refused to comply and continued to yell and scream. Jail Administrator House pulled out his TASER device in an effort to get the inmates' attention and encourage them to stop screaming. The TASER device was not fired at any time and was only used as a visual aid. Plaintiff then complied with the order to get on the ground.

(Doc. 58-1, Spence Aff. ¶ 14). As noted above, maintaining order in a jail is of critical importance. Although the plaintiff emphasizes that inmate Yates was pounding on the door and yelling and that House "mistakenly suspected" the plaintiff of participating, upon entering the cell, House instructed the plaintiff to put her hands behind her back and get on her knees. (Doc. 20 at 9). The plaintiff states that she "did not have the energy to explain that [she] was not the one pounding on the door

15

but instead [she] began to explain, 'I have a degenerative bone/joint disorder. I can't get down on my knees.'" (*Id.*). Because House and Officer Spence may have been unaware of who had been pounding and yelling at the instant they entered the cell, the plaintiff's actions in not complying with the order to get on her knees to be handcuffed could have been viewed as active resistance. Furthermore, the fact that a taser device was shown to the plaintiff and her cellmate, but not fired, supports the fact that an effort was made by House and Officer Spence to limit the amount of force used.

Although House ordered the plaintiff to get down on her knees even after the plaintiff explained that her degenerative disorder made it difficult to do so, there is no proof that House exerted any force against the plaintiff or even touched her.[10] House stated that "[h]aving inmates in handcuffs as they move through the Clay County jail is normal procedure to ensure the safety and security of the officers." (Doc. 57-4, House Aff. ¶ 14). It is undisputed that the plaintiff and inmate Yates were escorted "back to booking" where they were placed in a holding cell for House to speak to them about the disturbance. (Doc. 57-3 at 5). Considering the need to maintain order and security in the jail and the plaintiff's refusal or inability to obey

---

[10] The plaintiff states that "Yates wasn't ordered down to her knees" and inmate Yates "had never seen anyone else ordered down to their knees." (Doc. 60 at 5). House, on the other hand, stated that "[h]aving inmates move to the ground to be handcuffed is normal procedure at the Clay County Jail to ensure the safety and security of the inmates and the officers." (Doc. 57-4, House Aff. ¶ 14).

16

House's orders, the undersigned cannot say that House's actions were excessive. Moreover, although the plaintiff alleges that getting down on the floor injured her left knee, she provides no proof of any injury to her knee. Thus, the plaintiff's knee injury cannot be qualified as serious.

The plaintiff further alleges that after she explained to House that her degenerative disorder and flu symptoms prevented her from standing without using her hands, House ordered Officer Spence to "get her ass up." (Doc. 20 at 10). She alleges that Officer Spence "snatched [her] violently by the cuffed wrists to the standing position." (*Id*. at 7).[11] The plaintiff alleges that when Officer Spence pulled her cuffed wrists to get her in a standing position, this "forc[ed] me to apply force and strain on both muscles and joints to aid in the transition and prevent bone breakage." (*Id.* at 8). She claims that her wrists, lower back, left knee, and left ankle were injured. (*Id.*).[12]

First, regardless of whether the plaintiff refused or was unable to stand up when her hands were cuffed, she clearly needed assistance in standing. She admits that the transition to standing position required her to apply force and strain to her

---

[11] As noted above, Officer Spence stated that after the plaintiff was handcuffed, she was "assisted to a standing position by me. I recall nothing out of the ordinary when placing the handcuffs on Plaintiff or assisting her to a standing position." (Doc. 58-1, Spence Aff. ¶ 14).

[12] The plaintiff also alleged that she "soiled [her] pants with bodily excretion as a result of the sudden applied force and strain need to aid [her]self in transition from knees to a standing position." (Doc. 20 at 8).

muscles and joints, but that description does not support her claim that Officer Spence's action was conducted "violently." Second, the plaintiff did not request medical care after the incident on February 12, 2018, or the next day, on February 13, 2018, before she was transferred to Shelby County Jail. (*See* Docs. 57-4, House Aff. ¶ 16; 58-1, Spence Aff. ¶ 19). Nor did the plaintiff file a grievance about the incident while she was still incarcerated at the Clay County Jail. (Doc. 20 at 18; Doc. 57-4, House Aff. ¶ 11). Moreover, the plaintiff does not identify a specific injury diagnosed by a physician or supported by any medical tests. (Doc. 20 at 12). The plaintiff does not describe the results of the x-rays or any other evidence of a fracture or injury, let alone any evidence of an injury that would be recognizable by a layman, such as bruising or swelling. (*Id.*). Accordingly, the extent of the plaintiff's injuries appear to be minimal.

Based on the foregoing, the plaintiff fails to show that the defendants' use of force was objectively unreasonable and not related to legitimate penological and security interests. Accordingly, defendants House and Officer Spence's motion for summary judgment on the plaintiff's excessive force claim is due to be granted, and the claim is due to be dismissed.

## V. Recommendation

For the reasons stated above, the undersigned construes the defendants' motion for summary judgment as a motion to dismiss and **RECOMMENDS** the

motion be **GRANTED** and the claim be **DISMISSED WITHOUT PREJUDICE** pursuant to 42 U.S.C. § 1997e(a) for failing to exhaust administrative remedies. In the alternative, the undersigned **RECOMMENDS** the defendants' motion for summary judgment be granted and this action be **DISMISSED WITH PREJUDICE**.

### VI. Notice of Right to Object

Any party may file specific written objections to this report and recommendation. A party must file any objections with the Clerk of Court within fourteen (14) calendar days from the date the report and recommendation is entered. Objections should specifically identify all findings of fact and recommendations to which objection is made and the specific basis for objecting. Objections also should specifically identify all claims contained in the complaint that the report and recommendation fails to address. Objections should not contain new allegations, present additional evidence, or repeat legal arguments. An objecting party must serve a copy of its objections on each other party to this action.

Failing to object to factual and legal conclusions contained in the magistrate judge's findings or recommendations waives the right to challenge on appeal those same conclusions adopted in the district court's order. In the absence of a proper objection, however, the court may review on appeal for plain error the unobjected to

factual and legal conclusions if necessary in the interests of justice. 11th Cir. R. 3-1.

On receipt of objections, a United States District Judge will review *de novo* those portions of the report and recommendation to which specific objection is made and may accept, reject, or modify in whole or in part, the undersigned's findings of fact and recommendations. The district judge must conduct a hearing if required by law. Otherwise, the district judge may exercise discretion to conduct a hearing or otherwise receive additional evidence. Alternately, the district judge may consider the record developed before the magistrate judge, making an independent determination on the basis of that record. The district judge also may refer this action back to the undersigned with instructions for further proceedings.

A party may not appeal the magistrate judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. A party may only appeal from a final judgment entered by a district judge.

**DATED** this 4th day of May, 2020.

_____
**JOHN E. OTT**
Chief United States Magistrate Judge